## UNITED STATES GAS & OIL CO. v. COLE PETROLEUM CO. (No. 8222.)

Court of Civil Appeals of Texas. San Antonio. May 15, 1929.

Rehearing Denied June 5, 1929.

Mann, Neel & Mann, of Laredo, for plaintiff in error.

Hicks, Hicks, Dickson & Bobbitt, of Laredo, for defendant in error.

FLY, C. J. This suit was instituted by plaintiff in error, herein referred to as plaintiff, against defendant in error, who will be designated as defendant, in trespass to try title to 40 acres of land claimed under an oil and gas lease by plaintiff in Duval county, described as block 10, located in section 11 of the M. Arispe Grant. Defendant pleaded not guilty, and in an elaborate answer set up the contract of lease held by plaintiff, its forfeiture, and the acquirement of the lease by defendant. The cause was submitted to a jury through the medium of special issues, and upon the responses thereto, judgment was rendered that plaintiff take nothing by its suit; that the "written assignment, dated June 19, 1925, signed by plaintiff, United States Gas & Oil Company and R. R. Kirkpatrick, trustee, * * * purporting to convey to the United States Gas & Oil Company the oil and gas rights of the said Kirkpatrick, under the terms of a certain original oil and gas lease dated May 6, 1921, made and entered into by and between Rosa Vela De Benavides, a feme sole, individually and as guardian of Carlos, Alfonso, Roberto, Guillermo, and Arturo Benavides, minors, lessor, and C. R. Cole, trustee, lessee, which lease is recorded in the office of the clerk of the county court of Webb county * * * and the supplemental assignment covering said block 10, dated September 29, 1925, * * * be and the same are hereby canceled and held for naught, and all the rights, title, and interest in and to said block 10, in said section 11 of said M. Arispe Grant under the terms of said assignments and supplemental assignment, are hereby divested out of the said plaintiff United States Gas & Oil Company and vested in the said Cole Petroleum Company." The judgment further removed cloud from the title of appellee and assessed costs against appellant.

The jury found that plaintiff did not fail to drill its well No. 2, located on block 10, section 11, described in plaintiff's petition, to the deeper or Yegua sand, as required by the terms of the contract dated June 19, 1925, as changed by the supplemental contract, dated September 29, 1925, signed by plaintiff and R. R. Kirkpatrick and others; that it was not necessary, in order to properly protect block 10 from withdrawals from surrounding wells, that another well be drilled on No. 10 to offset against well on No. 7; being the Killam well. It was further found that the plaintiff could have sold and delivered the gas from wells 1 and 2 to the Southern Gas Company, at any time after the completion of the pipe line of Southern Gas Company, to the vicinity of block 10, at any time from date of completion of the pipe line, in February, 1926, to the date of the trial, and that a failure to sell the gas was not reasonable under the terms of the original and supplemental contracts. The jury also found that, if another well had been dug by plaintiff, the gas from that could have been sold to the Southern Gas Company from the time the well would have been completed until time of the trial.

Plaintiff secured its original lease from R. R. Kirkpatrick, trustee, in which plaintiff

bound itself to erect an 86-foot drilling der- rick on block 10, preparatory to digging a test well, and to begin the digging of said test well on or before September 15, 1925, and to prosecute the same with reasonable diligence "to the horizon of the Yegua sand at an ap- proximate depth of 2,500 feet." Plaintiff bound itself after completing the test well to "proceed with such additional development as is reasonably necessary to properly protect the area covered by this lease against with- drawals by surrounding wells, and to de- velop said lease to a normal stage of produc- tion." It was provided in the fifth clause of the contract: "The failure on the part of second party to comply with the drilling and development provision above outlined in the manner and form stated, shall work as a for- feiture of this lease, and shall revert to and vest in first party." Plaintiff agreed to de- liver to Kirkpatrick, trustee, free of cost, the pipe line to which he may connect his well, the equal of one-eighth part of all oil produced and saved from the tract, and pay to said Kirkpatrick three-eighths of 1 cent. per thou- sand cubic feet from all gas produced and saved from the tract. The advance payment on the lease was to be considered a payment on the royalty due on oil and gas produced. A supplemental assignment of the lease was made, which released plaintiff from reaching the Yegua sand in the first well, and providing for reaching it in a second well. It was ad- mitted in the pleadings of defendant that the first or test well was completed as re- quired by the contracts. Defendant claimed the lease by virtue of a sale to it by Kirk- patrick, trustee, on October 21, 1926, after, as defendant claimed, the lease had been forfeited by plaintiff. All of the claims of defendant to the land are based on the for- feiture of its contracts by plaintiff.

The jury found that the second well pro- vided for in the contracts was drilled as pro- vided for therein, and defendant admitted that the first well was dug according to con- tract. The jury also found that another well was not necessary as an offset to other wells surrounding block 10. The findings of the jury, in other words, were to the effect that plaintiff had complied with the terms of the contracts, and the forfeiture of the rights of plaintiff in the lease of block 10 must rest upon failure to sell the oil and gas to the Southern Gas Company that had been ob- tained by digging the two wells and the possi- ble gas that might have been obtained by an offset well, which had been found to be unnecessary. No other development on said block 10 was found to be necessary under the terms of the contracts.

█ The only grounds of forfeiture named in the contracts had not arisen, as found by the jury. The conditions upon which a for- feiture could be based had no existence, and these were in reality the only grounds of forfeiture submitted to the jury. The fail- ure to sell the oil and gas to the Southern Gas Company was not a ground of forfeiture, and the lease could not be declared forfeited on that ground. Such failure was not even impliedly a ground for forfeiture, however strong a basis it might have been for dam- ages. In such contract only the grounds specified in the contract can be utilized to forfeit the lease. This is the well-settled rule under recent Texas decisions. In Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464, the lessee had dug three wells on the leased prem- ises without obtaining oil and then removed his machinery from the land, and for nine years did nothing in connection with the lease. The lessor sued for cancellation of the lease on the ground of abandonment. In re- gard to a forfeiture clause in the lease, the Supreme Court approved the following from Harris v. Ohio Oil Co., 57 Ohio St. 131, 48 N. E. 506: "The lease in question provides for a forfeiture for the failure to comply with the conditions, or to pay the cash considera- tion in the lease mentioned, at the time and in the manner agreed; but the implied cove- nant, to reasonably operate the premises, is not mentioned in the lease, and is therefore not included in the causes of forfeiture. Some causes of forfeiture being expressly mentioned, none other can be implied. * * * The remedy for a breach of the im- plied covenant to reasonably operate the premises is therefore not by way of a for- feiture of the lease in whole or in part, but must be sought in a proper action for a breach of such covenant." Again, the Su- preme Court approves the following language used by the Dallas Court of Civil Appeals, in Wade v. Madison, 206 S. W. 119: "It seems settled, however, that ordinarily breaches of express covenants, much less those that arise only by implication, do not forfeit the right of possession or confer the right of re-entry, in the absence of an express provision to that effect in the contract." In the case of Lane v. Urbahn, 246 S. W. 1070, it was held by this court, through Associate Justice Smith: "The contract expressly provided that if the lessees failed to begin drilling a well on or before February 20, 1920, the lease should terminate, unless the lessee paid the stipu- lated rental; but in no other contingency was a forfeiture expressly provided for. The evidence showed, and the court found, that the lessee began drilling a well within the time stipulated, thus avoiding the only for- feiture expressly provided for. The obliga- tion of the lessee to diligently and in good faith fully develop the land was implied, but not expressed. It is now settled in this State that where a lease contract of this nature expressly fixes conditions upon which the contract may be cancelled, or avoided, the de- fault of the lessee in the performance of an implied obligation does not warrant cancel- lation, but merely an action for damag- es. * * *"

In the case now before this court, the only grounds expressly mentioned in the contract that would cause a forfeiture were found not to exist, and the forfeiture decreed by the court was necessarily based on the only other matter passed upon by the jury, which was the implied obligation of appellant to sell the gas and oil to the Southern Gas Company. As before stated, in the contract of assignment of the lease the only grounds of forfeiture were the failure "to comply with the drilling and development provisions." There was no failure to drill and develop. The rule shown by the quotations from the Grubbs-McAfee and Lane-Urbahn decisions has been consistently followed in Texas decisions. Texas Co. v. Curry (Tex. Civ. App.) 229 S. W. 643; Jacobs v. Robinson (Tex. Civ. App.) 241 S. W. 241, affirmed by the Supreme Court, 113 Tex. 231, 254 S. W. 309; Bryson v. Oil & Gas Co. (Tex. Civ. App.) 297 S. W. 1045; Freeport Sulphur Co. v. American Sulphur Co. (Tex. Sup.) 6 S. W. (2d) 1039. The same rule is followed in other states. Harris v. Oil Co., 57 Ohio St. 118, 48 N. E. 502; Core v. N. Y. Co., 52 W. Va. 276, 43 S. E. 128; Thornton, Law of Oil and Gas, c. V, §§ 171–218, and footnotes.

The judgment is reversed, and judgment is here rendered that appellant recover as prayed for in its pleadings.